**Larry SAMMS, Plaintiff,**

**v.**

**ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO, FERRARA & WOLF, LLP, Defendant.**

**No. 15–cv–2741 (JSR).**

United States District Court,
S.D. New York.

Signed July 6, 2015.

Ahmad Keshavarz, Ahmad Keshavarz, Law Offices, Brooklyn, NY, for Plaintiff.

Anthony Joseph Genovesi, Jr., Abrams, Fensterman, Fensterman, Eisman, Greenberg, Formato & Einig, Lake Success, NY, for Defendant.

### MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Plaintiff Larry Samms brings this action against the law firm of Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP ("Abrams"), alleging that Abrams engaged in unfair and deceptive debt collection practices in violation of state and federal law. Defendant Abrams now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

According to the Second Amended Complaint dated June 4, 2015, ECF No. 18 ("SAC"), Samms is a disabled sixty-five-year-old man who lives on a fixed income of social security and disability payments. *Id.* ¶ 5. He has resided at the same address in the Bronx for over thirty years. *Id.* ¶ 6. Samms suffers from elephantiasis, which renders him obese and largely bed-ridden and causes him to suffer oozing sores on his legs. *Id.* ¶¶ 18–20. He does not own a car, and in order to travel he must rent a car and ask his son to miss work to drive him. *Id.* ¶ 19.

On or about April 9, 2014, Abrams filed a summons and verified complaint (the "State Court Complaint") on behalf of its client, Bishop Charles W. MacLean Episcopal Nursing Home (the "Nursing Home") against Samms in New York Supreme Court, Westchester County. *Id.* ¶ 7. The State Court Complaint alleged that Samms owed a debt of $21,000 for services rendered by the Nursing Home. *See* Declaration of Anthony J. Genovesi, Jr. dated June 5, 2015 ("Genovesi Decl.") Ex. 1A. Samms alleges that the State Court Complaint was deceptive and abusive in three ways.

First, in the "wherefore" clause, the State Court Complaint demanded "[t]he cost, disbursements *and attorneys' fees* of this action, together with such other and further relief as this Court may deem just, proper, and equitable." Genovesi Decl. Ex. 1A (emphasis added). Samms alleges that attorneys' fees are not recoverable under New York law for claims for quantum meruit and unjust enrichment such as those alleged in the State Court Complaint.

Second, Samms alleges that the State Court Complaint misrepresented the amount of the debt he owed. Specifically, he alleges that "it is almost inconceivable that the value of services rendered to Samms was exactly $22,000 [*sic*]" because "[g]iven that Samms actually had insurance coverage that covered nursing home care, any amount due would be relatively small, if not close to zero." *Id.* ¶ 39.

Third, the State Court Complaint alleged that venue was proper in Westchester County because Samms resided at

"The Royal Regency Hotel, 165 Tuckahoe Road, Yonkers, New York 10710." SAC ¶ 9. However, Samms in fact resides in Bronx County. *Id.* ¶ 6. Moreover, Abrams was put on actual notice of this fact when it received the affidavit of service from its process server, which averred that Samms had been served at his residence in the Bronx, listing the address where Samms has resided for the past thirty years. *Id.* ¶ 12. Nonetheless, Abrams moved for default judgment against Samms in Westchester County. *Id.* ¶ 14. On September 15, 2015, the clerk entered judgment for $24,532.50. *Id.*

On September 29, 2014, Samms filed a *pro se* order to show cause to vacate the default judgment, which was granted on October 7, 2014. *Id.* ¶¶ 21–22. Samms then retained an attorney and, on February 2, 2015, served a demand to change the place of trial from Westchester County to Bronx County. *Id.* ¶¶ 27, 29. The court granted his demand and transferred the case to the Supreme Court, Bronx County, where it remains pending. *Id.* ¶¶ 30–31.

On the basis of the above allegations, Samms asserts three causes of action: (1) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), (2) violation of Section 349 of the New York General Business Law, and (3) violation of Section 487 of the New York Judiciary Law. Abrams moves for judgment on the pleadings dismissing the SAC in its entirety.

A motion for judgment on the pleadings pursuant to Rule 12(c) is governed by the same standards as a 12(b)(6) motion to dismiss for failure to state a claim. *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir.2001). Specifically, in order to survive a Rule 12(c) motion, the " 'complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ' " *Johnson v. Rowley*, 569

F.3d 40, 44 (2d Cir.2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). "On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.' " *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir.2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).

■ Samms's first cause of action is for violation of the FDCPA. Congress enacted the FDCPA, *inter alia*, in order to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). As relevant here, Section 1692e of the FDCPA prohibits use of "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In addition to this general prohibition, Section 1692e lists examples of prohibited conduct, including "[t]he false representation of ... any ... compensation which may be lawfully received by any debt collector for the collection of a debt." *Id.* § 1692e(2). Whether a communication is "false, deceptive, or misleading" is determined from the perspective of the "least sophisticated consumer." *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir.1993) (citation omitted).

Section 1692f of the FDCPA further prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Finally, Section 1692i requires that a legal action on a debt against a consumer be brought in the judicial district in which "such consumer signed the contract sued upon" or in which he or she "resides at the commencement of the action," *id.* § 1692i(a)(2).

■ The FDCPA imposes strict liability on debt collectors that violate the above-described provisions. *See Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 63 (2d Cir.1993). The debt collector may, however, avoid liability if it shows, by a preponderance of the evidence, "that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

■ Samms alleges that Abrams's demand for attorneys' fees in the "wherefore" clause of the State Court Complaint violated the FDCPA because Abrams had no entitlement to such fees. According to the SAC, Samms entered no contract authorizing the collection of such fees, nor is there any statute providing for an award of attorneys' fees in actions sounding in unjust enrichment or quantum meruit generally. *See Abacus v. Datagence, Inc.,* 66 A.D.3d 552, 553, 887 N.Y.S.2d 94 (1st Dep't 2009) (reversing award of attorneys' fees where not authorized by contract); *Banco Popular N. Am. v. Lieberman,* 75 A.D.3d 460, 461, 905 N.Y.S.2d 82 (1st Dep't 2010) (dismissing cause of action for attorneys' fees where claim sounded solely in unjust enrichment). Accordingly, Samms contends that he has plausibly alleged that Abrams' demand for attorneys' fees was a "false, deceptive, or misleading representation" under Section 1692e and also an attempt to collect an amount not "expressly authorized by the agreement creating the debt or permitted by law" in violation of Section 1692f(1).

The Court agrees. It appears that no court within this circuit has squarely addressed this issue. Nonetheless, the Court finds that, taking the allegations in the SAC as true, an unsophisticated consumer reading the State Court Complaint could be left with the false impression that Abrams was legally entitled to recover an award of attorneys' fees in addition to the amount of the debt allegedly owed. This false impression, in turn, could subtly coerce the consumer to pay the debt out of the fear of incurring even greater liability. Thus, the demand for attorneys' fees in the State Court Complaint falls squarely within Section 1692e's general prohibition against "false, deceptive, or misleading representation[s]," as well as its specific prohibition against "false representation[s] of . . . compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2)(A). In so holding, the Court joins the majority of courts that have considered this issue. *See McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939, 949 (9th Cir.2011) (affirming grant of summary judgment in favor of debtor where debt collector requested attorney's fees in state collection complaint); *Moxley v. Pfundstein,* No. 1:10–CV–2912, 2012 WL 4848973, at *5 (N.D.Ohio Oct. 11, 2012); *Foster v. D.B.S. Collection Agency,* 463 F.Supp.2d 783, 802 (S.D.Ohio 2006); *Strange v. Wexler,* 796 F.Supp. 1117, 1120 (N.D.Ill.1992); *cf. Lox v. CDA, Ltd.,* 689 F.3d 818, 826 (7th Cir.2012) (reversing grant of summary judgment in favor of debt collector who falsely stated in collection letter that a court "could allow . . . attorney fees"); *Fosen v. Weinstein & Riley, P.S.,* No. 4:12CV662, 2013 WL 4417526, at *5 (E.D.Tex. Aug. 14, 2013); *but see Argentieri v. Fisher Landscapes, Inc.,* 15 F.Supp.2d 55, 62 (D.Mass.1998).[1]

Abrams contends that the relief requested in the "wherefore" clause was in fact

***

1. The other cases on which Abrams relies are inapposite. *See Scioli v. Goldman & Warshaw P.C.,* 651 F.Supp.2d 273, 280 (D.N.J. 2009); *Winn v. Unifund CCR Partners,* No. CV 06–447–TUC–FRZ, 2007 WL 974099, at *3 (D.Ariz. Mar. 30, 2007). In both *Scioli* and *Winn,* unlike here, the debt collector *was* enti-

authorized by law, in that the New York Supreme Court had discretion to award reimbursement for reasonable attorneys' fees as a sanction for "frivolous conduct." N.Y. Ct. Rules § 130–1.1. At the time the State Court Complaint was filed, however, no "frivolous conduct" had occurred and so Abrams had no basis to request sanctions. The fact that Abrams could have obtained reimbursement of attorneys' fees if Samms had engaged in "frivolous conduct" at some later date does not create a basis for its demand. Moreover, had Samms engaged in "frivolous conduct," Abrams would only have been entitled to reimbursement of the attorneys' fees "resulting from" such conduct. *Id.* By contrast, the State Court Complaint demanded "attorneys' fees *of this action*," Am. Compl. ¶ 37, implying that it was entitled to *all* attorneys' fees incurred in the prosecution of the collection suit. Accordingly, the cited provision does not establish that Abrams's demand for attorneys' fees was authorized by law.

Abrams further argues that the "wherefore" clause of the complaint cannot be a "false, deceptive, or misleading representation" because it is a request directed at a third party, i.e., the court, and not a representation to the consumer that the debt collector is entitled to such fees. This position finds support in *Argentieri*, 15 F.Supp.2d at 62. However, *Argentieri's* discussion of the role of the "wherefore" clause was dicta, as the court found that the law firm was not a "debt collector" within the meaning of the FDCPA. *Id.* at 61. Furthermore, in that case, unlike here, the law firm had promptly withdrawn the disputed attorneys' fee demand

when it filed its amended complaint, which was before the FDCPA action was filed. *Id.* at 62. Finally, the *Argentieri* court's discussion rested on the assumption that a court pleading is not a "communication" with the consumer. The Second Circuit, however, has expressly held that it is. *See Fritz v. Resurgent Capital Servs., LP*, 955 F.Supp.2d 163, 170 (E.D.N.Y.2013) (citing *Goldman v. Cohen*, 445 F.3d 152 (2d Cir. 2006)). Thus, the Court is not persuaded that a statement in the "wherefore" clause of a complaint cannot constituted a "false, deceptive, or misleading representation" prohibited by the FDCPA, and Abrams's motion to dismiss must be denied with respect to his allegation that the demand for attorneys' fees violated the FDCPA.

■ Samms further argues that Abrams's allegation in the State Court Complaint that he owed $21,000 to the Nursing Home misrepresented the amount of his debt. In support of this contention, Samms alleges that the dollar amount claimed was "almost inconceivable" because he "actually had coverage that covered nursing home care." SAC ¶ 39. He fails to allege, however, any facts about his insurance coverage, such as the amount of the deductible or the absence of policy limits or exclusions. In the absence of any such factual allegations, there is nothing implausible about the amount claimed by the Nursing Home, and this aspect of his FDCPA claim must be dismissed.

■ Samms' final claim under the FDCPA is that Abrams brought suit in a judicial district other than that in which he "reside[d] at the commencement of the action," in violation of Section 1692i(a)(2).[2]

---

tled to recover attorneys' fees. The question was whether the debt collector's demand for a specific dollar amount was deceptive.

**2.** Section 1692i(a)(2) also permits the debt collector to bring suit in the judicial district in which the "consumer signed the contract

sued upon." In this case, however, neither party alleges that Samms entered any contract with the Nursing Home. In any event, any contract would most likely have been signed at the Nursing Home, which is located in Queens County, not in Westchester County.

The SAC alleges that Samms resides, and has resided for the past thirty years, in the Bronx, SAC ¶ 6, but that Abrams nonetheless brought suit in Westchester County, *id.* ¶ 7. These allegations are plainly sufficient.

In arguing to the contrary, Abrams relies on an affidavit that Samms submitted to the Supreme Court, Westchester County in support of his application to transfer the case to Bronx County. *See* Genovesi Decl. Ex. 2A. Abrams argues that Samms, in his affidavit, admitted that he in fact resided at the Royal Regency Hotel in Westchester County upon his discharge from the Nursing Home. In so arguing, Abrams grossly mischaracterizes Samms's affidavit. In fact, Samms explained: "I stayed at the Royal Regency Hotel only very briefly, when I was discharged from the plaintiff's nursing home facility in 2013. My brief stay at the Royal Regency Hotel lasted only until my residence ... in the Bronx was made ready for my post-discharge return there." *Id.* ¶ 3. Clearly, a brief stay at a hotel does not establish a residence there. *See* Black's Law Dictionary (10th ed.2014) (defining "residence" as the "act or fact of living in a given place *for some time.*" (emphasis added)).[3] And even if it somehow did, Samms stated that his stay at the Royal Regency took place in 2013, whereas the State Court Complaint was filed in 2014. The propriety of venue for FDCPA purposes is measured at the "commencement of the action." 15 U.S.C. § 1692i(a)(2). Accordingly, defendant's motion must be denied with respect to Samms's allegation that Abrams violated the FDCPA's venue provision.

▮ Samms's second cause of action is for violation of Section 349 of the New York General Business Law, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. L. § 349. Section 349 further provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name" to recover damages. *Id.* "The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising." *Genesco Entm't, a Div. of Lymutt Indus., Inc. v. Koch,* 593 F.Supp. 743, 751 (S.D.N.Y.1984). In order to state a claim under Section 349, a plaintiff must plausibly allege three elements: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank,* 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (Ct.App.2000) (internal citations omitted).

▮ Although the first element does "not require a repetition or pattern of deceptive behavior," the plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (Cr.App.1995). Thus, disputes that are "unique to the parties," such as "private contract dispute[s]," do not "fall within the ambit of the statute." *Gaidon v. Guardian Life Ins. Co. of Am.,* 94 N.Y.2d 330, 344, 704 N.Y.S.2d 177, 725 N.E.2d 598 (Ct.App.1999); *see also Maurizio v. Goldsmith,* 230 F.3d 518, 522 (2d Cir.2000) ("It is clear that 'the gravamen of the complaint must be consumer injury or harm to the public interest.'" (citation omitted)).

---

3. The FDCPA does not define "residence." *See* 15 U.S.C. § 1692a.

■ Samms has failed to allege that Abrams's conduct was consumer-oriented within the meaning of Section 349. The challenged conduct consisted of filing a single complaint that suffered from various alleged deficiencies, as described above. This conduct—the prosecution of an individual lawsuit—was not commercial activity directed at consumers generally, nor did it have any "ramifications for the public at large." *Obal v. Deutsche Bank Nat. Trust Co.,* No. 14 Civ. 2463, 2015 WL 631404, at *8 (S.D.N.Y. Feb. 13, 2015) *reconsideration denied sub nom. Obal v. Deutsche Bank Nat. Trust Co. as Tr. for Morgan Stanley Mortgage Loan Trust 2004-9,* No. 14 Civ. 2463, 2015 WL 3999455 (S.D.N.Y. June 29, 2015) (internal quotation marks and citation omitted). To the contrary, Abrams's alleged misconduct affected only the parties to that particular lawsuit. And although the SAC alleges in conclusory fashion that "Abrams has filed suits against consumers other than Mr. Samms demanding judgment that includes attorney's fees when the claims were limited to claims that did not allow for recovery for attorney's fees," SAC ¶ 56, this allegation falls short of establishing that Abrams's conduct had a "broader impact on consumers at large." Accordingly, Samms's second cause of action must be dismissed.

■ Samms's third cause of action is for violation of Section 487 of the New York Judiciary Law, which provides that "[a]n attorney or counselor who ... [i]s guilty of any deceit or collusion ... with intent to deceive the court or any party ... forfeits to the party injured treble damages." N.Y. Jud. L. § 487. Unlike the FDCPA, which creates strict liability, "[a] violation of Judiciary Law § 487 requires an intent to deceive." *Moormann v. Perini & Hoerger,* 65 A.D.3d 1106, 886 N.Y.S.2d 49 (2d Dep't 2009). New York courts have limited the application of this section to "intentional egregious miscon-

duct." *O'Callaghan v. Sifre,* 537 F.Supp.2d 594, 596 (S.D.N.Y.2008).

■ Samms has failed to allege facts indicating that Abrams intended to deceive the court or any other party. At most, the SAC alleges that, at the time the State Court Complaint was filed, Abrams should have known that Samms resided in the Bronx and that Abrams was not entitled to recover attorneys' fees. However, negligence is not sufficient to state a claim for violation of Section 487. *See id.* at 596 ("[A]n action grounded essentially on claims that an attorney made meritless or unfounded allegations in state court proceedings would not be sufficient to make out a violation of § 487"). Accordingly, Samms's third cause of action must be dismissed.

Defendant's motion for judgment on the pleadings is hereby granted with respect to the allegation in claim 1 that Abrams misrepresented the amount of the debt as $21,000, and is likewise granted with respect to claims 2 and 3. Defendant's motion is otherwise denied. The clerk is directed to close document number 15 on the docket of this case.

SO ORDERED.